HENRY TUTHILL et al., Respondents, *v.* THEODORE BOGART, Appellant.

Plaintiffs entered into a contract with S. & G., by which the former agreed to malt for the latter 25,000 bushels of barley from October 1, 1875, to June 1, 1876, at a price specified. Plaintiffs were to purchase the barley, and ship the malt when directed by S. & G., who were to have the increase. S. & G. agreed to accept plaintiffs' drafts "in payment for the purchase of the barley," or to furnish satisfactory notes. At the close of each month plaintiffs were to furnish a statement of the amount malted, and on presentation S. & G. agreed to pay the price for malting. S. & G. also agreed to pay interest, exchange and insurance on the barley and malt from the time the barley was paid for by plaintiffs until the malt was delivered. Plaintiffs were authorized to retain and hold as security, after June first, a sufficient amount of the malt to pay any notes or drafts then unpaid. In an action for malt manufactured under the contract, but not delivered or paid for, which had been levied upon by defendant as sheriff, under and by virtue of an execution against S. & G., *held*, that the legal title in the malt was in the plaintiffs until paid for, and that S. & G. had no leviable interest therein.

(Argued December 2, 1879 ; decided December 9, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Mem. of decision below, 14 Hun, 487.)

This action was brought to recover damages for the alleged taking and conversion of a quantity of malt which was levied upon by defendant as sheriff under and by virtue of an execution against Smith & Girvan.

On September 29, 1875, plaintiffs, said Smith & Girvan, entered into the following contract:

"This agreement, made this 29th day of September, 1875, by and between H. & E. D. Tuthill, of Penn Yan, Yates county, N. Y., and Smith & Girvan, of the city of New York, as follows:

"The said H. & E. D. Tuthill agree to malt for said Smith & Girvan, at their malt-house in Penn Yan aforesaid, twenty-five thousand bushels of barley during the season from the 1st day of October, 1875, to the 1st of June, 1876, at the rate of twenty-five cents per bushel for each and every bushel of barley so malted; the said barley when made into malt to be delivered by the said H. & E. D. Tuthill free of expense on board of cars at Penn Yan aforesaid; the said Smith & Girvan to have and receive all the increase of the said barley after the same is manufactured into malt, and the same shall be manufactured in a good and workmanlike manner, upon the following conditions:

"The said H. & E. D. Tuthill shall purchase the barley on the market at market rates, and the said barley shall consist of fifteen thousand bushels of what is known as six-rowed State, and of ten thousand bushels of what is known as two-rowed State, and shall be of good quality.

"And the said H. & E. D. Tuthill shall ship the malt at such times and in such quantities as the said Smith & Girvan may direct, the accumulation of such malt not to exceed six weeks' malting. The said Smith & Girvan are to furnish all bags required for shipment. The said Smith & Girvan agree to accept the drafts of said H. & E. D. Tuthill on New York city at sixty days in payment for the purchase of said barley, unless said Smith & Girvan shall furnish such brewers' notes, indorsed by said Smith & Girvan, having not more than ninety days to run, as said H. & E. D. Tuthill can use, or such as will be satisfactory to them, in place of said drafts or some of them. Said H. & E. D. Tuthill are to furnish and deliver to said Smith & Girvan at the close of each month of said period, a statement of the amount malted dur--

ing that month, and said Smith & Girvan agree to pay the same on presentation. The said Smith & Girvan agree to pay the necessary interest and exchange; also insurance on the barley and malt from the time said barley is paid for by said H. & E. D. Tuthill until it is delivered on the cars as aforesaid; also the interest and exchange on such notes or drafts as may be given in payment for the malt when shipped.

"It is further agreed that said H. & E. D. Tuthill may retain and hold, after the first day of June next, a sufficient amount of the malt aforesaid to pay any notes or drafts above mentioned remaining then unpaid, as security for the payment thereof, until paid.

"In witness whereof, we have hereunto subscribed our names, the day and year first above mentioned.

"[Signed]     H. & E. D. TUTHILL,
SMITH & GIRVAN."

"In presence of L. J. RICE."

The referee found, in substance, that plaintiffs under and in pursuance of the contract prior to May 1, 1876, purchased the 25,000 bushels of barley called for by the contract, paid for the same and manufactured it into malt. That the cost of the malt, including the purchase price of the barley, the agreed price for malting, the interest, insurance and expense amounted to about $30,000, of which sum Smith & Girvan paid $12,500; of the malt so manufactured, plaintiffs shipped to Smith & Girvan about 700 bushels. Defendant levied upon 2,500 bushels of the malt manufactured out of said barley, and then in plaintiffs' possession.

*Samuel Hand*, for appellant. At the time the levy was made both the interest of Smith & Girvan, as pledgors and of plaintiffs as pledgees, could be reached by execution. (*Weaver* v. *Darley*, 42 Barb., 411; *Bakewell* v. *Ellsworth*, 6 Hill, 484; *Moore* v. *Hitchcock*, 4 Wend., 292; *Stief* v. *Hart*, 1 N. Y., 20; *Wheeler* v. *McFarland*, 10 Wend., 322; 2 R. S. [3d ed.], 464.)

*J. McGuire*, for respondents. No title to the malt passed until a delivery of the same at the place named in the contract. (*Low* v. *Austin*, 20 N. Y., 181; *McConihe* v. *N. Y. E. R. Co.*, id., 495; *Cole* v. *Mann*, 62 id., 1; *Baily* v. *H. R. R. R. Co.*, 49 id., 70, 75; *Tyler* v. *Strong*, 21 Barb., 198; *Seymour* v. *Montgomery*, 1 Keyes, 463; 48 Barb., 402; 49 id., 407; 52 N. Y., 550.) Title would not vest until an acceptance by Smith & Girvan, as well as delivery. (*Howard* v. *Hoey*, 23 Wend., 350; Lalors Hill & Denio, 213; *Sturm* v. *At. M. Ins. Co.*, 63 N. Y., 77.) Smith & Girvan could have no title, legal or equitable, in the malt until a delivery, although they had made advances upon it. (*Schoonmaker* v. *Vervalen*, 9 Hun, 139; 14 id., 487.)

Miller, J. The action was brought to recover the value of a quantity of malt taken by the defendant, by virtue of an execution against Smith & Girvan, from the malt-house of the plaintiffs. The question to be determined is whether legal title to the malt was in the plaintiffs, or whether the defendants in the execution, Smith & Girvan, had an interest in the same, which was the subject of levy and sale. By the contract the plaintiffs agreed to malt for Smith & Girvan a certain number of bushels of barley, which was specified, between certain dates and at a price named, and to deliver the same, as agreed upon, to Smith & Girvan, who were to receive the increase. The plaintiffs were to purchase and pay for the barley and ship the malt in quantities as directed. Provision is made for the payment of plaintiffs, with other conditions which will hereafter be considered. Aside from those not already stated, there is manifestly a contract for the purchase of the barley and manufacture of the malt by the plaintiffs which conferred title upon them until the plaintiffs were paid the price agreed upon; and we think that contract contains no other provisions which interfere with this interpretation. It is clear that the plaintiffs were to purchase the barley on their own account, and not as agents of Smith & Girvan, and that they were to pay or become responsible for the pur-

chase price, without any regard to Smith & Girvan. Smith & Girvan were not responsible and in no way could have been held liable for the purchase of the barley by the plaintiffs or third parties; and hence title conferred by the purchase was in the plaintiffs alone.

In regard to the acceptance of the drafts of the plaintiffs by Smith & Girvan, it was only a mode of refunding to the plaintiffs the amounts paid by them, which did not confer any title to the same on Smith & Girvan, or change the nature of the contract. The provisions in regard to monthly statements and payment of the amounts due, and the payment of interest, exchange and insurance, were also intended to refund to the plaintiffs the amounts thus expended, and were not inconsistent with the ownership of the barley by the plaintiffs. These various expenses constituted a part of the price which Smith & Girvan were to pay the plaintiffs for the barley, after they had purchased and manufactured the same into malt. They were to receive a certain sum for each bushel, and these expenses, therefore, were proper items to be paid by Smith & Girvan to enable the plaintiffs to reap these profits. As to the insurance, it may be remarked that the plaintiffs would have been obliged to pay for it, unless provided for, as an indemnity against loss; and there was nothing unusual in providing also for its reimbursement by Smith & Girvan, as a part of the amount which they were to pay on the contract for the malt. If Smith & Girvan were the owners and had title to the property, then there was no occasion for any provision as to the expense of insurance.

The clause in the agreement that the plaintiffs might retain and hold, after the first day of June, 1876, a sufficient quantity of the malt to pay any notes or drafts remaining unpaid, as a security for the payment thereof until paid, which is also relied upon, had reference to an antecedent provision by which the malt was to be manufactured and delivered by that time, and was no doubt designed to restrict that provision, so that the plaintiffs could retain a sufficient quantity of the malt to indemnify themselves against outstanding

liabilities of Smith & Girvan. Otherwise, and without this clause, the plaintiffs would have been obliged to deliver as provided.

None of the suggestions to which reference has been had tend to establish title in Smith & Girvan, or to show the intention of the parties that Smith & Girvan should be regarded as the owners. The statement of the counsel of the appellant, to the effect that after deducting the malt delivered, the plaintiffs still retained more than sufficient to secure the payment of all which was due to them, does not establish a title in Smith & Girvan which rendered the barley liable to levy and sale under execution. While the malt was in plaintiffs' possession no title passed, and although Smith & Girvan may have had an equitable interest in the same, which could be made perfect by the payment of the plaintiffs demand, it conferred no title or absolute right which could be reached by levy and sale under an execution. Such an interest might, perhaps, in an equitable action by a judgment creditor, after the return of an execution and after the plaintiffs' demand had first been satisfied, be applied in payment of the debt, but was not the subject of levy and sale. The property belonged to the plaintiffs absolutely. It was paid for by them, and they had never parted with the title. It was not held by the plaintiffs as a pledge, or otherwise than as owners of the same ; and to hold that, under such circumstances, a judgment debtor could levy upon and sell the property, would sanction a rule which has no authority to support it.

We discover no ground for reversing the decision of the referee, and the judgment should be affirmed.

All concur.

Judgment affirmed.